_____IN THE SUPREME COURT OF TENNESSEE
_____AT NASHVILLE


DAVID HUTTON,                    ) **FOR PUBLICATION**
                                 ) FILED: November 17, 1997
        Plaintiff/Appellee,       )
                                 )
Hon. James L. Weatherford, Judge
                                 )
v.                               ) Giles County
                                 )
RUTH E. JOHNSON,                 )
Commissioner of Revenue          ) NO.  01S01-9705-CH-00101
for the State of Tennessee,      )
                                 )
        Defendant/Appellant.      )

**FILED**

**November 17, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

FOR APPELLANT                            FOR APPELLEE

John Knox Walkup                         Christopher M. Was
Attorney General & Reporter              Trabue, Sturdivant & DeWitt
                                         Nashville, Tennessee
Michael E. Moore
Solicitor General

Michael W. Catalano
Associate Solicitor General
Nashville, Tennessee

O P I N I O N




Judgment of Trial Court
and Court of Appeals Reversed

Cause Remanded.                                    Drowota, J.

We granted the application for permission to appeal filed by the defendant, Department of Revenue, regarding the issue whether the Court of Appeals erred in upholding the trial court's determination that the plaintiff, in computing the use tax on a jet aircraft acquired by him in December of 1993, was entitled to a credit under Tenn. Code Ann. § 67-6-510. We denied the application for permission to appeal filed by the plaintiff, David Hutton.

We conclude that the transaction whereby Mr. Hutton acquired the jet airplane upon which the Department of Revenue imposed use taxes did not constitute a trade nor was such transaction part of a series of trades. Therefore, Mr. Hutton is not entitled to a credit under Tenn. Code Ann. § 67-6-510 in computing the use tax on the jet aircraft. Given our disposition of this issue, we do not address the other issues presented in the Department of Revenue's application. The judgment of the Court of Appeals and that of the trial court are reversed, and the plaintiff's suit for a refund of use taxes is dismissed.

BACKGROUND

David Hutton, who is a resident of Pulaski, Tennessee, is engaged in the real estate development business. He owns, directly or indirectly, several shopping centers in the southeastern part of the United States.

Prior to June of 1993, Mr. Hutton owned a twin-engine propeller-driven airplane, a Beech Model F 90, which he used in his real estate business.

In 1993 he decided to replace this propeller-driven airplane with a jet aircraft that would better serve his business needs. He wanted to structure his disposition of the propeller-driven plane and acquisition of a jet aircraft in a manner that would enable him to defer, for federal income tax purposes, the gain he would realize upon the disposition of the propeller-driven plane.

Bell Aviation, Inc. is an aircraft brokerage firm with its principal place of business in Lexington, South Carolina. On June 25, 1993, Bell Aviation, Inc. entered into a contract with David Hutton (the "Exchange Agreement") pursuant to which Mr. Hutton sold his Beech Model F 90 to Bell Aviation, Inc. for a price of $1,142,000.

The Exchange Agreement was drafted in a manner intended to permit David Hutton to defer, pursuant to Section 1031 of the Internal Revenue Code, the recognition of the gain that he realized upon selling the propeller-driven plane to Bell Aviation, Inc. Accordingly, under the Exchange Agreement Mr. Hutton was given 45 days from June 25, 1993 to identify "like kind" property that he could acquire "in exchange" for the propeller-driven plane. Mr. Hutton had under the Exchange Agreement 180 days from June 25, 1993 in which to acquire title to any such "like kind" property that he identified.

Under the terms of the Exchange Agreement, Bell Aviation, Inc. was required to use its best efforts to facilitate Mr. Hutton's desire to have the transaction qualify as an exchange of "like kind" property under Section 1031 of the Internal Revenue Code. In this regard, Bell Aviation, Inc. was called

upon to execute certain documents in the event Mr. Hutton was successful in identifying "like kind" property. However, Bell Aviation, Inc.'s undertaking was limited by the following provision of the Exchange Agreement:

> Notwithstanding anything herein contained to the contrary:
>
> A.   Bell shall not be in default under this Exchange Agreement and shall not be liable for any damages, losses, or expenses incurred by owner (David Hutton), if:  (i) Bell fails to take any steps to locate, negotiate for or acquire the Exchange Property, or (ii) any Exchange Property fails to qualify as 'like kind' property, or the transaction otherwise fails, for any reason, to afford Owner some or all of the benefits of § 1031 of the Internal Revenue Code, unless the failure is caused solely by the gross negligence of Bell or a negligent misrepresentation (regarding whether Bell Aviation, Inc. was a 'disqualified person' as defined in U.S. Treasury Regulation § 1.1031(k)-1(k))."

Contemporaneous with the execution of the Exchange Agreement on June 25, 1993, David Hutton conveyed title to the Beach Model F 90 to Bell Aviation, Inc.  Bell Aviation, Inc. paid the $1,142,000 purchase price by paying $512,913.48 to satisfy an outstanding lien on the propeller-driven plane and by paying the balance, $629,086.52, to an escrow agent (First National Bank of Pulaski).

The Exchange Agreement provided that if Mr. Hutton had not identified suitable "like kind" property and acquired such "like kind" property within the respective 45-day and 180-day time limits, he would have been entitled to the $629,086.52 that Bell Aviation, Inc. had paid to the escrow agent,

plus the interest thereon accruing after June 25, 1993. Otherwise, the money in the escrow account would be paid on David Hutton's behalf as partial payment of "like kind" property that he acquired. Thus, the benefits on the escrow account belonged to Mr. Hutton after June 25, 1993.

Neither Bell Aviation, Inc.'s acquisition of title to the Beach Model F 90 on June 25, 1993 nor Mr. Hutton's benefiting from the full price paid therefor, $1,142,000.00, was subject to any condition regarding Mr. Hutton's success in finding and acquiring suitable "like kind" property.

On August 6, 1993, Mr. Hutton sent to Bell Aviation, Inc. a letter stating that he "identifies property described as, Cessna Citation II, as Exchange Property under the (Exchange) Agreement."

David Hutton entered into a contract dated December 16, 1993 with Cessna Aircraft Company of Wichita, Kansas entitled "Used Aircraft Purchase Agreement" (the "Cessna Agreement"). The Cessna Agreement called for Mr. Hutton to purchase from Cessna Aircraft Company a 1985 Cessna Citation S/II jet aircraft. The price for the jet aircraft was $2,250,000.00, with $112,500 being paid upon execution of the Cessna Agreement and the balance, $2,137,500.00, being due upon delivery of the jet. The Cessna Agreement included the following provision:

"Selling Price            $2,250,000
Less Trade Allowance         0
Net Price                $ 2,250,000
Deliver Price             $2,250,000"

The Cessna Agreement contained no reference to the transaction whereby Mr. Hutton had sold the propeller-driven aircraft to Bell Aviation, Inc. It did include the following provision:

> "This Agreement is the only agreement controlling this purchase and sale, express or implied, either verbal or in writing, and is binding on Purchaser and Seller, their heirs, executors, administrators, successors or assigns. This Agreement, including the rights of Puchaser hereunder, may not be assigned by Purchaser except to a wholly-owned subsidiary or successors in interest by name change or otherwise and then only upon the prior written consent of Seller. Purchaser acknowledges receipt of a written copy of this Agreement which may not be modified in any way except by written agreement executed by both parties."

On December 17, 1993, David Hutton executed a document pursuant to which he purported to assign his rights under the Cessna Agreement to Bell Aviation, Inc. Such an assignment had been contemplated by the terms of the Exchange Agreement between Mr. Hutton and Bell Aviation, Inc. On the same day Bell Aviation, Inc. executed a letter that purported to direct Cessna Aircraft Company to deliver title to the jet aircraft directly to Mr. Hutton. It is not clear from the record whether this letter and Mr. Hutton's assignment were actually sent to Cessna Aircraft Company.

Bell Aviation, Inc. also signed a letter dated December 17, 1993 in which it directed the escrow agent under the Exchange Agreement, First National Bank of Pulaski, to pay the money it had been holding in the escrow

account to Cessna Aircraft Company as partial payment for Mr. Hutton's purchase of the jet aircraft.

Mr. Hutton states in his affidavit that, "The transaction for acquisition of the Cessna aircraft was closed on December 20, 1993. After certain modifications, maintenance and pilot training were completed, the aircraft was delivered to me on or about January 20, 1994."

The Department of Revenue sent David Hutton a letter dated September 2, 1994 by which it assessed use taxes on the jet aircraft Mr. Hutton had purchased from Cessna Aircraft Company. (Sales taxes were not imposed because the transaction between Mr. Hutton and Cessna Aircraft Company did not occur in the State of Tennessee.) The amount of the September 2, 1994 use tax assessment was based on the full purchase price of the jet aircraft, $2,250,000.

Mr. Hutton paid the portion of the use tax assessment that he did not contest, which was the portion thereof based on the excess of the price of the jet aircraft ($2,250,000) over the price for which he had sold the propeller-driven plane ($1,142,000). Following an informal conference between Mr. Hutton and the Department of Revenue, the Department sent Mr. Hutton's attorney a letter dated December 19, 1994 that included the following:

> "The totality of the circumstances mandate (sic) a finding that a trade-in credit is unavailable. The facts indicate that no trade-in occurred, but rather two separate transactions took place. The Department must therefore uphold the tax and interest portions of the assessment."

In response to the foregoing letter, Mr. Hutton, on December 30, 1994, paid the balance of the assessment.

The Department of Revenue sent Mr. Hutton a letter dated December 7, 1995 in which the Department of Revenue, pursuant to Tenn. Code Ann. § 67-1-1802(c)(2), waived the requirement for filing an administrative claim for a refund and informed Mr. Hutton that he had six months in which to file a suit for a refund in chancery court.

Mr. Hutton filed his complaint in the Chancery Court for Giles County on April 25, 1995. He sought a refund of a portion of the use taxes he had paid based on his contention that, in computing the use taxes on the jet aircraft he had acquired from Cessna Aircraft Company, he was entitled to a credit under Tenn. Code Ann. § 67-6-510 for the propeller-driven plane he had sold to Bell Aviation, Inc.

Both parties moved for summary judgment. The trial court granted the summary judgment motion of Mr. Hutton and denied that of the Department of Revenue. The trial court ruled that Mr. Hutton was entitled to a refund based on a $1,142,000 trade-in value for the propeller-driven plane.

The Department of Revenue appealed the trial court's decision to the Court of Appeals. The Court of Appeals agreed with the trial court that Mr. Hutton was entitled to a credit under Tenn. Code Ann. § 67-6-510. However,

the Court of Appeals held that the credit should have been limited to an amount based on the amount deposited by Bell Aviation, Inc. in the escrow account, rather than an amount based on the full $1,142,000 value of the propeller-driven plane.[1]

Judge Koch filed a dissenting opinion in which he concluded that no credit was allowable under Tenn. Code Ann. § 67-6-510 because the acquisition of the jet aircraft, "does not involve a trade or series of trades."

## ANALYSIS

The Department of Revenue's assessment of use taxes with respect to the jet aircraft David Hutton acquired for Cessna Aircraft Company was made pursuant to Tenn. Code Ann. § 67-6-203(a). This statute provides as follows:

> (a) A tax is levied at the rate of six percent (6%) of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; provided, that there shall be no duplication of the tax."

Mr. Hutton maintains that he is entitled to a credit against the use tax assessment under Tenn. Code Ann. § 67-6-510. Subsection (a) of this statute provides as follows:

> "(a) Where used articles are taken in trade, or in a series of trades, as a credit or part payment on the

---

[1]Because we conclude that the plaintiff is not entitled to any credit under Tenn. Code Ann. § 67-6-510, we do not address the difference of opinion between the trial court and the Court of Appeals regarding the calculation of the amount of a trade-in credit.

sale of new or used articles, the tax levied by this chapter shall be paid on the net difference, that is, the price of the new or used ariticle sold less the credit for the used article taken in trade."

Tenn. Code Ann. § 67-6-510 operates to negate (in part) other provisions of the Retailers' Sales Tax Act that would otherwise impose sales or use taxes. Therefore, the rules of statutory construction that apply to exemptions (which are listed in Tenn. Code Ann. §§ 67-6-301 through 67-6-352) apply to the contruction and application of Tenn. Code Ann. § 67-6-510. See, e.g., Tibbals Flooring Company v. Huddleston, 891 S.W.2d 196, 198 (Tenn. 1994); Covington Pike Toyota, Inc. v. Cardwell, 829 S.W.2d 132, 135 (Tenn. 1992); Rogers Group, Inc. v. Huddleston, 900 S.W.2d 34, 36 (Tenn. App. 1995). These rules of statutory construction were described by the Court of Appeals in American Cyanamid Company v. Huddleston, 908 S.W.2d 396 (Tenn. App. 1995), as follows:

"Tax exemption statutes are to be construed against the taxpayer and will not be implied. . . .

Every presumption is against exemption, and any well founded doubt defeats a claimed exemption. . . .

The burden is upon the taxpayer to establish a claimed exemption. . . ." (Citations omitted)

908 S.W.2d at 400.

The documents pursuant to which Mr. Hutton sold the Beach Model F 90 to Bell Aviation, Inc. and purchased a jet aircraft from Cessna Aircraft Company establish that these were two independent transactions. Neither of these transactions was dependent upon the completion of the other. Even if we apply the "step transaction doctrine" (as is urged by the plaintiff and

as was done by the majority of the Court of Appeals), we do not reach a different conclusion.

The "step transaction doctrine" is a doctrine that federal courts have adopted in dealing with cases that are governed by the Internal Revenue Code. The U.S. Court of Appeals for the Second Circuit described this doctrine and the two tests that are employed thereunder as follows in Greene v. United States, 13 F.2d 577 (2nd Cir. 1994):

> "The (step transaction) doctrine treats the 'steps' in a series of formally separate but related transactions involving the transfer of property as a single transaction, if all the steps are substantially linked. . . . Rather than viewing each step as an isolated incident, the steps are viewed together as components of an overall plan. . . . Of course, the doctrine cannot manufacture facts that never occurred . . .
>
> Under the end result test, the step transaction doctrine will be invoked if it appears that a series of separate transactions were prearranged parts of what was a single transaction, cast from the outset to achieve the ultimate result. . . .
>
> The interdependence test is a variation of the end result test. . . . It focuses on whether the steps are 'so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series.'. . . To apply this test, a court must determine whether the individual steps had 'independent significance or whether they had meaning only as part of the larger transaction.'"

13 F.3d 577, at 583-84.

The two transactions involved in this case each had independent significance. Neither of such transactions was dependent on the carrying out of the other. After June 25, 1993, Bell Aviation, Inc.'s purchase of the propeller-

driven plane from Mr. Hutton and its payment of the purchase price therefor had become final; even though the Exchange Agreement contemplated efforts to make the provisions of Section 1031 of the Internal Revenue Code available to Mr. Hutton, Bell Aviation, Inc.'s purchase of the propeller-driven plane was not contingent on the success of such efforts. Even if we assume that Mr. Hutton's assignment of his rights under the Cessna Agreement and Bell Aviation, Inc.'s December 17, 1993 letter directing Cessna Aircraft Company to deliver title to the jet airplane to Mr. Hutton were actually delivered to Cessna Aircraft Company, such documents did not have significance; the transaction involving the jet airplane was carried out according to the terms of the Cessna Agreement, i.e., Cessna Aircraft Company conveyed title to the jet aircraft to Mr. Hutton in exchange for the full purchase price of $2,250,000.

**CONCLUSION**

We conclude that Mr. Hutton's acquisition of the jet aircraft did not involve a trade nor was it part of a series of trades. Therefore, in computing the use taxes on the jet aircraft, no credit is available under Tenn. Code Ann. § 67-6-510. The judgment of the Court of Appeals and the judgment of the trial court are reversed. This case is remanded to the trial court for entry of summary judgment in favor of the Department of Revenue and the awarding of reasonable attorney's fees and expenses of litigation pursuant ot Tenn. Code Ann. § 67-1-1803(d).

Frank F. Drowota, III,
Justice

**Concur:**

Anderson, C.J.
Reid, Birch, Holder, J.J.