MID CITY BANK, INC., APPELLANT, V. DOUGLAS COUNTY BOARD OF EQUALIZATION AND NEBRASKA TAX EQUALIZATION AND REVIEW COMMISSION, APPELLEES.

616 N.W. 2d 341

Filed August 25, 2000.    No. S-99-907.

Patrick M. Heng, of Raynor, Rensch & Pfeiffer, for appellant.

James S. Jansen, Douglas County Attorney, and Timothy J. Buckley for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an appeal from a decision of the Nebraska Tax Equalization and Review Commission affirming a determination by the Douglas County Board of Equalization regarding the valuation of certain items of tangible personal property acquired by Mid City Bank, Inc., through the purchase of stock of Western Security Bank of Omaha and the merger of the two banks. We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 18, 1996, Mid City Bank, Inc. (Mid City), and Western Security Holding Company, Ltd., entered into a purchase agreement whereby Mid City was to acquire at least 93.75

percent of the stock in Western Security Bank of Omaha (Western Security Bank), which stock was owned by Western Security Holding Company as of that date. The purchase price of the stock was $11.5 million. On or about May 14, 1996, Mid City submitted an application to the Nebraska Department of Banking and Finance to acquire Western Security Bank by merger. In an order dated August 16, 1996, the Department of Banking and Finance approved the merger with certain conditions which were subsequently met. The "Articles of Merger" entered into by Mid City and Western Security Bank designated December 1, 1996, as the effective date of the merger.

Mid City elected under I.R.C. § 338 (1994) of the Internal Revenue Code to treat the purchase of Western Security Bank's stock as an asset acquisition. Pursuant to this election, Mid City filed a federal form 4562, depreciation and amortization, with its 1996 federal tax return. Form 4562 reports the assets of Western Security Bank as being placed in service by Mid City during the year 1996.

On March 17, 1998, the Douglas County assessor notified Mid City that changes in valuation had been made on its personal property return for the year 1997. An attached description provided that the value of three items had been decreased, while the value of seven other items had been increased, for a net increase in value of $1,768,035. On April 13, Mid City filed a letter of protest with the Douglas County Board of Equalization, arguing that its election under I.R.C. § 338 was not controlling under Nebraska law and that the transaction at issue was not a purchase, so that the assets should be deemed acquired on the date originally acquired by Western Security Holding Company and should retain Western Security Holding Company's original basis. The Douglas County Board of Equalization denied this protest on April 28.

Mid City appealed the Board's denial of its protest to the Tax Equalization and Review Commission (the TERC) pursuant to Neb. Rev. Stat. §§ 77-5015 to 77-5018 (Reissue 1996 & Cum. Supp. 1998). The parties waived their right to a hearing before the TERC and stipulated to the introduction of the seven exhibits in the record. The TERC determined that as a result of Mid City's I.R.C. § 338 election, the adjusted basis of the per-

sonal property acquired as a result of its merger with Western Security Bank increased for federal tax purposes and that Nebraska personal property tax laws are based upon federal law. The TERC also found that the acquisition of stock and the subsequent merger was a purchase because "the ultimate purpose of the merger was the purchase of the target corporation's assets." The TERC therefore held that the increase in assessed value to reflect the Nebraska adjusted basis as that basis determined under I.R.C. § 338 was correct and affirmed the determination of the Douglas County Board of Equalization. Mid City then perfected this appeal, which we moved to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts. Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Mid City assigns, restated, (1) that the evidence at the hearing was sufficient to require the TERC to reverse the decision of the Douglas County Board of Equalization, (2) that the TERC erred in concluding that the "Nebraska adjusted basis" for tangible personal property acquired as a result of a merger where an I.R.C. § 338 election is made is the adjusted basis as determined under I.R.C. § 338, (3) that the TERC erred in concluding that the transfer was a purchase of assets and liabilities and not simply a transfer of stock, and (4) that the TERC erred in its interpretation of Neb. Rev. Stat. §§ 77-118 and 77-120 (Reissue 1996) and 77-201 (Cum. Supp. 1998) because such interpretation violates the Equal Protection Clauses of the Nebraska and U.S. Constitutions, the interstate commerce provisions in the Nebraska and U.S. Constitutions, the special legislation provision in the Nebraska Constitution, and the uniformity clause of the Nebraska Constitution.

## STANDARD OF REVIEW

Appellate review of a TERC decision shall be conducted for error on the record. Neb. Rev. Stat. § 77-5019(5) (Supp. 1999); *Pfizer v. Lancaster Cty. Bd. of Equal.*, ante p. 265, 616 N.W.2d 326 (2000); *Bartlett v. Dawes Cty. Bd. of Equal.*, 259 Neb. 954, 613 N.W.2d 810 (2000). When reviewing an order for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evi-

dence, and is neither arbitrary, capricious, nor unreasonable. *Id.* In instances where an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Id.*

## ANALYSIS

Resolution of the issues presented in this appeal requires an examination of certain state and federal statutory provisions. Section 77-201(3) provides in relevant part:

*Tangible personal property* . . . shall constitute a separate and distinct class of property for purposes of property taxation, shall be subject to taxation, unless expressly exempt from taxation, and *shall be valued at its net book value.* Tangible personal property transferred as a gift or devise *or as part of a transaction which is not a purchase* shall be subject to taxation based upon the date the property was acquired by the previous owner and at the previous owner's Nebraska adjusted basis.

(Emphasis supplied.) As we noted in *Pfizer v. Lancaster Cty. Bd. of Equal., supra,* § 77-201(3) was amended in 1997. See 1997 Neb. Laws, L.B. 270 and 271. As was the case in *Pfizer,* those amendments do not affect our disposition of this appeal, and we cite to the current statute for the sake of simplicity and convenience. See *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue,* 259 Neb. 24, 607 N.W.2d 857 (2000).

Section 77-120(1) provides that "[n]et book value of property for taxation shall mean that portion of the Nebraska adjusted basis of the property as of the assessment date for the applicable recovery period in the table set forth in this subsection." Section 77-118 defines "Nebraska adjusted basis" as "the adjusted basis of property as determined under the Internal Revenue Code increased by the total amount allowed under the code for depreciation or amortization or pursuant to an election to expense depreciable property under section 179 of the code." The Internal Revenue Code states simply that "[t]he basis of property shall be the cost of such property, except as otherwise provided in this subchapter . . . ." I.R.C. § 1012 (1994). The basis as defined by I.R.C. § 1012 in turn comprises the Nebraska adjusted basis under § 77-118, which then comprises the net book value under

§ 77-120(1). *Pfizer v. Lancaster Cty. Bd. of Equal., supra.*
Section 338 of the Internal Revenue Code provides:

> (a) General rule
>
> For purposes of this subtitle, if a purchasing corporation makes an election under this section (or is treated under subsection (e) as having made such an election), then, in the case of any qualified stock purchase, the target corporation—
>
> (1) shall be treated as having sold all of its assets at the close of the acquisition date at fair market value in a single transaction, and
>
> (2) shall be treated as a new corporation which purchased all of the assets referred to in paragraph (1) as of the beginning of the day after the acquisition date.

The critical question is whether Mid City acquired the subject property by "purchase," which is defined by Neb. Rev. Stat. § 77-122 (Reissue 1996) as follows:

> Purchase shall include taking by sale, discount, negotiation, or any other transaction for value creating an interest in property except liens. Purchase shall not include transfers for stock or other ownership interests upon creation, dissolution, or any other tax-free reorganization for income tax purposes of any corporation, partnership, limited liability company, trust, or other entity.

The position of Mid City is that the transaction in question fell within the scope of the second sentence of § 77-122 and was therefore not a "purchase," so that the Nebraska adjusted basis in the tangible personal property which it acquired in the transaction was the same as that of the previous owner pursuant to § 77-201(3). The Douglas County Board of Equalization contends that under the "step transaction doctrine," the transactions involving Mid City, Western Security Holding Company, and Western Security Bank must be viewed as a single transaction in which the tangible personal property of Western Security Bank was acquired by Mid City, requiring valuation as of the date of the purchase. See *Pfizer v. Lancaster Cty. Bd. of Equal., ante* p. 265, 616 N.W.2d 326 (2000).

In resolving this issue in favor of the taxing authority, the TERC reasoned that the stock purchase was not an isolated

transaction, but, rather, an integral portion of a multipart transaction intended to achieve the acquisition of Western Security Bank's assets by Mid City. The TERC concluded that Mid City's argument that it purchased stock and not assets "would have the Commission ignore the substance of the underlying transaction, and base its decision solely on the form of part of the transaction, rather than substance. It is not the function of the law to exalt form over substance."

■ This reasoning finds support in the step transaction doctrine, which originated in the federal courts and has subsequently been adopted by several state courts in assessing the tax consequences of multifaceted business transactions. See, *Comm'r v. Court Holding Co.*, 324 U.S. 331, 65 S. Ct. 707, 89 L. Ed. 981 (1945); *Minnesota Tea Co. v. Helvering*, 302 U.S. 609, 58 S. Ct. 393, 82 L. Ed. 474 (1938); *Kornfeld v. C.I.R.*, 137 F.3d 1231 (10th Cir. 1998); *Greene v. U.S.*, 13 F.3d 577 (2d Cir. 1994); *Associated Wholesale Grocers, Inc. v. U.S.*, 927 F.2d 1517 (10th Cir. 1991); *Brown v. United States*, 782 F.2d 559 (6th Cir. 1986); *McDonald's Restaurants of Illinois v. C. I. R.*, 688 F.2d 520 (7th Cir. 1982); *Stephens, Inc. v. United States*, 464 F.2d 53 (8th Cir. 1972); *King Enterprises, Inc. v. United States*, 418 F.2d 511 (Ct. Cl. 1969); *Read v. Supervisor of Assessments*, 354 Md. 383, 731 A.2d 868 (1999); *Hutton v. Johnson*, 956 S.W.2d 484 (Tenn. 1997); *McMillin-BCED/Miramar Ranch v. San Diego*, 31 Cal. App. 4th 545, 37 Cal. Rptr. 2d 472 (1995); *Noddings Inv. Group, Inc. v. Capstar Communications, Inc.*, No. CIV. A. 16538, 1999 WL 182568 (Del. Ch. March 24, 1999). A succinct articulation of the doctrine is found in *Commissioner v. Clark*, 489 U.S. 726, 109 S. Ct. 1455, 103 L. Ed. 2d 753 (1989), in which the Supreme Court was presented with the question of whether a cash payment made in connection with a "stock for stock" exchange was a dividend taxable as ordinary income or a capital gain. The Court stated:

> Our reading of the statute as requiring that the transaction be treated as a unified whole is reinforced by the well-established "step-transaction" doctrine, a doctrine that the Government has applied in related contexts, . . . and that we have expressly sanctioned . . . . Under this doctrine, interrelated yet formally distinct steps in an integrated

transaction may not be considered independently of the overall transaction. By thus "linking together all interdependent steps with legal or business significance, rather than taking them in isolation," federal tax liability may be based "on a realistic view of the entire transaction."

(Citations omitted.) 489 U.S. at 738, quoting 1 B. Bittker, Federal Taxation of Income, Estates and Gifts ¶ 4.3.5 (1981).

The step transaction doctrine arose from the "central tenet of tax law that tax liability depends upon the substance not the form of a transaction." *Greene v. U.S.*, 13 F.3d at 581, citing *Comm'r v. Court Holding Co., supra.* See, also, *King Enterprises, Inc. v. United States*, 418 F.2d at 517 (characterizing "central purpose" of step transaction doctrine as assurance that "tax consequences turn on the substance of a transaction rather than on its form"). Although the doctrine was first applied in the context of federal income taxation, it has since been utilized by state courts in analyzing issues involving various forms of state taxation. See, e.g., *Read v. Supervisor of Assessments, supra* (applying doctrine to determine propriety of imposition of rollback tax on sale of real estate withdrawn from conservation agreement); *Hutton v. Johnson, supra* (utilizing doctrine to evaluate whether two transactions involving purchase of jet aircraft should be considered stepped together for purposes of personal property taxation); *McMillin-BCED/Miramar Ranch v. San Diego, supra* (applying doctrine in action for refund of real property taxes).

Three separate tests have been developed by the courts in applying the step transaction doctrine: the "binding commitment test," the "interdependence test," and the "end result test." See, *Associated Wholesale Grocers, Inc. v. U.S.*, 927 F.2d 1517 (10th Cir. 1991); *Read v. Supervisor of Assessments*, 354 Md. 383, 731 A.2d 868 (1999). Under the binding commitment test, a transaction will be stepped together if, at the first step of the transaction, a binding commitment was entered into to undertake later steps. *Read v. Supervisor of Assessments, supra.* The Supreme Court's application of this test in *Commissioner v. Gordon*, 391 U.S. 83, 88 S. Ct. 1517, 20 L. Ed. 2d 448 (1968), has been limited to the facts of that case, and federal courts generally find it to be of limited applicability. See, *McDonald's*

*Restaurants of Illinois v. C. I. R.*, 688 F.2d 520 (7th Cir. 1982); *King Enterprises, Inc. v. United States*, 418 F.2d 511 (Ct. Cl. 1969). The interdependence test focuses on whether the steps in a transaction are so interrelated that " 'the legal relations created by one transaction would have been fruitless without a completion of the series.' " *Greene v. U.S.*, 13 F.3d 577, 584 (2d Cir. 1994). In applying this test, the courts look at whether each step had independent meaning or whether it had meaning only as part of a larger transaction. *Id.* The end result test is based upon the initial intent of the parties. *Read v. Supervisor of Assessments, supra.* This test analyzes whether separate transactions are really part of "a single transaction intended from the outset to be taken for the purpose of reaching the ultimate result." *Associated Wholesale Grocers, Inc. v. U.S.*, 927 F.2d at 1523, quoting *King Enterprises, Inc. v. U.S., supra.* Courts have applied the step transaction doctrine "upon an adequate showing that one or more of the applicable tests is satisfied by the facts presented." *McMillin-BCED/Miramar Ranch v. San Diego*, 31 Cal. App. 4th 545, 556, 37 Cal. Rptr. 2d 472, 478 (1995). See, also, *Read v. Supervisor of Assessments, supra; Associated Wholesale Grocers, Inc. v. U.S., supra.*

Although we have not previously invoked the step transaction doctrine, we conclude that it is appropriate to do so in this case in order to determine whether a series of transactions occurring over a period of less than 8 months are separate and distinct or are so interrelated as to constitute a single transaction for purposes of personal property taxation. The purchase agreement entered into by Mid City and Western Security Holding Company on April 18, 1996, identifies Mid City as "Purchaser" and Western Security Holding Company as "Seller," and recites that "the Purchaser desires to purchase Western Security Bank of Omaha from the Seller." Less than a month after entering into the purchase agreement, Mid City applied to the Nebraska Department of Banking and Finance for approval of the acquisition by merger of the assets and liabilities of Western Security Bank. In its order entered on August 16, 1996, the department specifically stated that "the application of Mid City Bank, Inc. . . . to acquire by merger the assets and liabilities of Western Security Bank . . . and to operate WSB's offices as detached

branch banks of Mid City Bank, Inc., under the name 'Mid City Bank, Inc.' be, and hereby is, approved." The plan of merger was approved by Mid City's board of directors on October 11. The merger occurred simultaneously with the stock purchase on December 1. Mid City elected under I.R.C. § 338 to treat its purchase of Western Security Bank's stock as an asset acquisition. These uncontroverted facts support a reasonable inference that Mid City intended from the outset to reach the end result of acquiring both the stock and assets of Western Security Bank through an integrated series of transactions. Thus, applying the end result test component of the step transaction doctrine, the several transactions can be considered as one, and the determination by the TERC that the substantive nature of the transaction amounted to a purchase of assets is therefore supported by competent evidence and is not arbitrary or capricious.

Mid City further argues that if the TERC's interpretation of §§ 77-118, 77-120, and 77-201 is correct, such statutes would violate various provisions of the Nebraska and U.S. Constitutions. We regard this argument as a challenge to the constitutionality of these statutes which we do not reach because Mid City did not file and serve the written notice required by Neb. Ct. R. of Prac. 9E (rev. 2000). Strict compliance with this rule is required in order for an appellate court to consider a challenge to the constitutionality of a statute. *Zoucha v. Henn*, 258 Neb. 611, 604 N.W.2d 828 (2000). We note, however, that this court recently considered and rejected a constitutional challenge similar to that which Mid City failed to preserve in this case. See *Pfizer v. Lancaster Cty. Bd. of Equal.*, ante p. 265, 616 N.W.2d 326 (2000).

## CONCLUSION

For the reasons stated, we conclude that the decision of the TERC affirming the denial of Mid City's valuation protest by the Douglas County Board of Equalization conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. It is therefore affirmed.

AFFIRMED.