# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### March 22, 2011 Session

## CREATIVE LABEL, INC. v. DAVID TUCK, WEAKLEY COUNTY ASSESSOR OF PROPERTY, ET AL.

### Direct Appeal from the Chancery Court for Madison County
### No. 59385      James F. Butler, Chancellor

### No. W2010-01557-COA-R3-CV - Filed May 11, 2011

The trial court affirmed the determination of the State Board of Equalization that taxpayer's leasehold interest in tax-exempt property belonging to an Industrial Development Board was not exempt from ad valorem taxation where the parties had executed a payment in lieu of taxes agreement under Tennessee Code Annotated § 7-53-305 as it existed during the relevant tax period.  We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Richard L. Winchester and Stephen L. Anderson, Memphis, Tennessee, for the appellant, Creative Label, Inc.

Jeffery T. Washburn, Dresden, Tennessee, for the appellees, David Tuck, Weakley County Assessor of Property, Donald Doster, Weakley County Trustee, Dick Tidwell, Administrator for the City of Martin, Tennessee, and Weakley County, Tennessee.

Robert E. Cooper, Jr., Attorney General and Reporter, Joseph F. Whalen Associate Solicitor General and Mary Ellen Knack, Senior Counsel, for the appellee, State of Tennessee Division of Property Assessments and The Tennessee State Board of Equalization.

### MEMORANDUM OPINION[1]

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

(continued...)

This tax case involves the construction of Tennessee Code Annotated § 7-53-305(b) as it existed during the tax years 1993 to 1998. The facts giving rise to this appeal are undisputed. Plaintiff Creative Label, Inc. ("Creative Label") is an Illinois corporation that operates a manufacturing and warehousing facility ("the property") leased from the City of Martin Industrial Development Board ("the IDB"), as governed by Tennessee Code Annotated § 7-53-101, *et seq*. Under the terms of the April 1987 lease executed by Creative Label and the IDB, the IDB agreed to acquire and construct a "project" (defined under the contract as: "the real property and improvements thereon") on property located in the Martin Industrial Park, and lease it to Creative Label for a term of 99 years at a rental amount of $1.00 per year. In April 1987, Creative Label also entered into an agreement with Defendants Weakley County ("the County") and the City of Martin ("the City") that provided for payments in lieu of taxes ("PIL's"). The agreed PIL's were payments in the amount of $4,000 per year to the County and $2,000 per year to the City.

The current dispute involves the County's assessment of *ad valorem* taxes on Creative Label's leasehold interest in the tax-exempt real property for the tax years 1993 to 1998. Creative Label appealed the assessments to the State Board of Equalization ("the Board") on the grounds that "leasehold assessment" was as assessment of the fee simple owned by the IDB, and that the leasehold interest held by Creative Label did not have a positive value. Creative Label also asserted, in the alternative, that the PIL's made to the County and the City precluded the assessment of additional taxes. In March 2000, the matter was heard by the Assessment Appeals Commission ("the Commission") appointed by the Board. The Board reviewed the matter after the Commission "deadlocked" on what the Board determined to be the "dispositive issue regarding the assessment status of the leasehold interest held by Creative Label[.]" By agreement of counsel, the Board's review was confined to the record of the proceedings before the Commission, including the briefs submitted to the Commission. The parties stipulated as to valuation and assessment. The matter before the Board was limited to whether, under Tennessee Code Annotated § 7-53-305, Creative Label was exempt from the assessment of *ad valorem* taxes on its leasehold interest where Creative Label had made PIL's to the City and County. The Board determined that the leasehold interest held by Creative Label was taxable pursuant to Tennessee Code Annotated § 67-5-502, and that it was not exempt from taxation under section 7-53-305.

[1](...continued)
This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

In January 2002, Creative Label filed a petition for review in the Chancery Court of Madison County pursuant to Tennessee Code Annotated § 67-5-1511. The trial court entered a scheduling order in March 2010, and heard the matter on May 25, 2010. On May 27, 2010, the trial court issued a detailed letter ruling to the parties, concluding that Creative Label's leasehold interest was subject to *ad valorem* taxation "as a separate interest in the real estate, separate and apart from the fee interest which is exempt from taxation since it is owned by the IDB." The trial court entered a final decree on June 18, 2010. In its final order, the trial court incorporated its letter ruling; found that Creative Label had failed to carry its "heavy burden to show by clear and convincing evidence that the Payments in Lieu of Taxes in this case, when made, are in full satisfaction of the obligations . . . with regard to use and *ad valorem* taxes on [its] leasehold estate"; affirmed the order of the Board and its final assessment; and assessed costs against Creative Label. Creative Label filed a timely notice of appeal to this Court.

### *Issues Presented*

Creative Label presents the following issues for our review, as we consolidate and slightly re-word them:

(1) Whether the trial court erred in determining that Tennessee Code Annotated § 7-53-305(b), as it existed during the relevant tax periods, did not exempt or relieve Creative Label from liability for the *ad valorem* taxes assessed by Weakley County where Creative Label made PIL's under the parties' 1987 agreement.

(2) Whether the trial court erred in determining that Plaintiff's burden of proof was "its heavy burden to show by clear and convincing evidence."

(3) Whether the trial court erred in determining that the interpretation of Tennessee Code Annotated § 7-53-305(b) urged by Creative Label would render this statute unconstitutional.

(4) Whether the trial court appropriately considered the constitutionality of Tennessee Code Annotated § 7-53-305 in the absence of notice to the Attorney General of Tennessee.

### *Standard of Review*

The proceedings in the trial court were pursuant to Tennessee Code Annotated §

67–5–1511(b), which provides, in relevant part:

> The judicial review provided in subsection (a) shall consist of a new hearing in the chancery court based upon the administrative record and any additional or supplemental evidence which either party wishes to adduce relevant to any issue.

Tenn. Code Ann. § 67-5-1511(b) (1998 & Supp. 2010). We review the determination of the trial court under Tennessee Rule of Appellate Procedure 13(d), presuming the trial court's findings of fact to be correct unless the evidence preponderates otherwise. We review the trial court's conclusions on questions of law *de novo*, with no presumption of correctness. *Richardson v. Assessment Appeals Comm'n*, 828 S.W.2d 403, 407 (Tenn. Ct. App. 1991).

### *Discussion*

We turn first to Creative Label's assertion that the trial court erred by considering questions of constitutionality without notice to the Attorney General. Although notice to the Attorney General is required when a party seeks to challenge the constitutionality of a statute so that the State may defend the statute, there was no constitutional challenge to the statute at issue in this case. Rather, this case was one of statutory interpretation in which the parties offered differing interpretations in light of constitutional requisites. To the extent to which the trial court's determination was based on constitutional considerations, it is well settled that "'[i]t is our duty to adopt a construction which will sustain the statute and avoid [that] constitutional conflict, if its recitations permit such a construction.'" *Jordan v. Knox County*, 213 S.W.3d 751, 780 (Tenn. 2007)(quoting *State v. Mallard*, 40 S.W.3d 473, 480 (Tenn. 2001) (quoting *Marion County Bd. of Comm'rs v. Marion County Election Comm'n*, 594 S.W.2d 681, 684–85 (Tenn. 1980))). This issue is without merit.

We next turn to whether the trial court erred by stating that Creative Label was required to demonstrate that it was entitled to an exemption from *ad valorem* taxes by clear and convincing evidence. The courts must construe taxation statutes liberally in favor of the taxpayer and strictly against the taxing authority. *ADT Sec. Servs., Inc. v. Johnson*, 329 S.W.3d 769, 775 (Tenn. Ct. App. 2009)(citing *Covington Pike Toyota, Inc. v. Cardwell, Comm'r of Revenue*, 829 S.W.2d 132, 135 (Tenn.1992)). On the other hand, statutes that provide exemptions from taxation are strictly construed against the taxpayer. *Id.* The taxpayer carries the burden of demonstrating that it is entitlement to an exemption. *Id.* This Court has stated that the taxpayer must demonstrate that it performs the activities necessary to claim a statutory tax exemption by clear and convincing evidence. *School Calendar Co., Inc. v. Huddleston*, Nos. 03A01-9603-CH-00090, 03A01-9603-CH-00091, 1996 WL 400520, at *4 (Tenn. Ct. App. July 18, 1996). In this case, however, the dispositive issue is whether

section 7-53-305 permits PIL's of any amount by a taxpayer not within the enumerated categories to be made in lieu of all *ad valorem* taxes on the taxpayer's leasehold interest. The issue is not whether Creative Label has met its burden to demonstrate that it is entitled to an exemption, but whether an exemption exists for any similarly situated taxpayer. This is a matter which we review *de novo*, with no presumption of correctness for the determination of the trial court.

We turn to the construction of section 7-53-305. The parties do not dispute that the value of a leasehold interest generally is subject to *ad valorem* taxation when the real property is exempt from taxation. Thus, it is not disputed that Creative Label's leasehold interest would be taxable if the parties had not executed the April 1987 agreement providing for PIL's. It also is not disputed that the measure of the taxable amount is the fair market value less actual rent paid. The issue in this case, as we perceive it, is whether PIL's, when paid, serve to discharge the lessee's total liability for taxes on its leasehold interest, regardless of the amount; or whether the PIL's merely reduce the lessee's tax liability by an amount equal to the PIL's.

Creative Label asserts that the legislature's purpose of encouraging economic growth through the formation and activities of industrial development corporations included tax incentives designed to induce commercial enterprises to relocate and remain in property owned by industrial development boards. It asserts that the legislature intended that section 305(b) offered a tax incentive whereby the IDB and taxpayer could enter into an agreement for a payment in lieu of taxes that would otherwise be assessed. It argues that the legislature's intent that PIL's, when paid, satisfied a taxpayer's entire *ad valorem* tax obligation is evidenced by the last sentence of section 305(b), and by the fact that the sentence was not removed when the section was amended in 1997.

The County, City, and State Board of Equalization (collectively, Appellees), on the other hand, assert that the legislative intent of promoting economic growth does not necessitate exempting leasehold interests from taxation. Appellees contend that the sentence of former 305(b) stating that the payment of agreed PIL's satisfies a lessee's entire tax obligation relates only to those entities contained in the specific designation immediately preceding the exemption provision. Although they acknowledge that no court has construed the relevant provision, Appellees rely on opinions of the Attorney General issued in the 1970's and 1980's, and the Commission's opinion in Appeal of Wilton Corporation (January 22, 1993), to support its argument that PIL's are in lieu of taxes on the IDB's interest, not on Creative Label's. In the trial court, Appellees also asserted that the parties' 1987 agreement reserved the right of the County and City to assess all lawfully required taxes, and that the construction of section 305(b) offered by Appellees is necessary in light of Article II, Section 28 of the Tennessee Constitution. Appellees have not emphasized constitutional concerns

in their briefs to this Court, however.

When interpreting a statute, we seek to ascertain and effectuate the legislature's intent, neither unduly restricting nor expanding the statute beyond its intended scope in light of the context of the entire statute and the natural and ordinary meaning of the statutory language. *Hathaway v. First Family Fin. Servs., Inc.*, 1 S.W.3d 634, 640 (Tenn. 1999) (citations omitted); *JJ & TK Corp. v. Bd. of Comm'rs*, 149 S.W.3d 628, 630-31 (Tenn. Ct. App. 2004) (citations omitted). When the language of the statute is clear, we must utilize the plain, accepted meaning of the words used by the legislature to ascertain the statute's purpose and application. If the wording is ambiguous, however, we must look to the entire statutory scheme and at the legislative history to ascertain and effectuate the legislature's intent and purpose. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004) (citations omitted).

Tennessee Code Annotated § 7-53-305 as it existed from 1993-1997 provided:

Exemption from taxation — Payments in lieu of ad valorem taxes — Securities.
(a) The corporation is hereby declared to be performing a public function in behalf of the municipality with respect to which the corporation is organized and to be a public instrumentality of such municipality. Accordingly, the corporation and all properties at any time owned by it and the income and revenues therefrom and all bonds issued by it and the income therefrom shall be exempt from all taxation in the state of Tennessee. Also for purposes of the Securities Act of 1980, compiled as title 48, chapter 12, part 1, and any amendment thereto or substitution therefor, bonds issued by the corporation shall be deemed to be securities issued by a public instrumentality or a political subdivision of the state of Tennessee.
(b) The municipality shall have the power to delegate to the corporation the authority to negotiate and accept from the corporation's lessees, payments in lieu of ad valorem taxes, provided that any such authorization shall be granted only upon a finding that such payments are deemed to be in furtherance of the corporation's public purposes as defined in this section. The legislative body of the municipality making such delegation may, in its sole discretion, require the corporation to submit any such agreement to such legislative body for its approval. With regard to any project located within an area designated as the center-city area by a municipality in which there has been created a central business improvement district pursuant to chapter 84 of this title, the amount of such payments shall not be fixed below the lesser of:
(1) Ad valorem taxes otherwise due and payable by a tax paying entity

-6-

upon the current fair market value of the leased properties; or

(2) Ad valorem taxes that were or would have been due and payable on the leased properties for the period immediately preceding the date of their acquisition by the corporation.

Notwithstanding the above provisions, the amount payable in lieu of taxes by hotel and motel lessees, ten (10) years after completion of the project on leased property, shall be not less than the ad valorem taxes otherwise due and payable upon the current fair market value of the property. All such payments when made shall be in full satisfaction of the obligations of the corporation's lessees with regard to use and ad valorem taxation of leasehold estates in corporation properties.

(c) The provisions of this section as amended in 1971 shall apply, from the date of their issuance, to all bonds heretofore or hereafter issued under the provisions of this chapter and the income from such bonds whether heretofore or hereafter received.

In 1997, the legislature removed the provision relating to hotels and motels. Thus, the 1997 version of section 305(b) provided:

(b) The municipality has the power to delegate to the corporation the authority to negotiate and accept from the corporation's lessees, payments in lieu of ad valorem taxes; provided, that any such authorization shall be granted only upon a finding that such payments are deemed to be in furtherance of the corporation's public purposes as defined in this section. The legislative body of the municipality making such delegation may, in its sole discretion, require the corporation to submit any such agreement to such legislative body for its approval. With regard to any project located within an area designated as the center-city area by a municipality in which there has been created a central business improvement district pursuant to chapter 84 of this title, the amount of such payments shall not be fixed below the lesser of:

(1) Ad valorem taxes otherwise due and payable by a tax paying entity upon the current fair market value of the leased properties; or

(2) Ad valorem taxes that were or would have been due and payable on the leased properties for the period immediately preceding the date of their acquisition by the corporation.

All such payments when made shall be in full satisfaction of the obligations of the corporation's lessees with regard to use and ad valorem taxation of leasehold estates in corporation properties.

The legislature enacted subsequent amendments, and the 1998 version of section 305(b) eliminated the last sentence of the section. Thus, the 1998 version of 305(b) provided:

> (b) The municipality has the power to delegate to the corporation the authority to negotiate and accept from the corporation's lessees, payments in lieu of ad valorem taxes; provided, that any such authorization shall be granted only upon a finding that such payments are deemed to be in furtherance of the corporation's public purposes as defined in this section. The legislative body of the municipality making such delegation may, in its sole discretion, require the corporation to submit any such agreement to such legislative body for its approval. With regard to any project located within an area designated as the center-city area by a municipality in which there has been created a central business improvement district pursuant to chapter 84 of this title, the amount of such payments shall not be fixed below the lesser of:
>
> (1) Ad valorem taxes otherwise due and payable by a tax paying entity upon the current fair market value of the leased properties; or
>
> (2) Ad valorem taxes that were or would have been due and payable on the leased properties for the period immediately preceding the date of their acquisition by the corporation.

The 1998 version also added subsections (d) and (e), providing:

> (d)(1) Payments in lieu of taxes and any lease payments payable to a corporation, to the extent such payments in lieu of taxes and lease payments in the aggregate do not exceed ad valorem taxes otherwise due and payable where the leased property is owned by an entity subject to taxation, shall become and remain a first lien upon the fee interest in the leased property from January 1 of the year in which such payment in lieu of taxes on lease payments is due. The corporation may enforce such lien, and also obtain interest at ten percent (10%) per annum from the date due and reasonable attorneys' fees, by suit filed in the circuit or chancery court.
>
> (2) The provisions of subdivision (d)(1) shall apply with equal force to all such subleases and their sublessees.
>
> (e) Before October 1 of each year, the corporation shall submit to the state board of equalization an annual report containing a list of all the real and personal property owned by the corporation and its associated entities and subsidiaries; the value of each listed property as determined by the assessor of property; the date and term of the lease for each listed property; the amount of payments made in lieu of property taxes for each listed property; the date each

listed property is scheduled to return to the regular tax rolls; and a calculation of the taxes which would have been due for each listed property if the properties were privately owned or otherwise subject to taxation.

The history of this dispute evidences that section 305(b), as it existed during the relevant period, was ambiguous with respect to which it provided relief from *ad valorem* taxation of leasehold interests. In light of this ambiguity, we turn to the undisputed and long-recognized purpose of the act establishing industrial development corporations ("the Act"). As stated as early as 1960,

> it is to alleviate the problems of unemployment and to raise family income and to provide a means by which the citizens of the community may promote and develop industry in their area so as to obtain a balanced economic development highly essential to the welfare of the State, and to promote the development of commercial, industrial, agricultural and manufacturing enterprises by the several municipalities so as to be given local benefits peculiar to each and general benefits to the entire State.

*Small World, Inc. v. Indus. Dev. Bd. of the City of Tullahoma*, 553 S.W.2d 596, 600 (Tenn. Ct. App. 1976)(cert. denied March 7, 1977). The Act is to be liberally construed in order to effectuate this intention. *Id.*; Tenn. Code Ann. § 7-53-102. In *West v. Industrial Development Board of the City of Nashville*, 332 S.W.2d 201, 202 (Tenn. 1960), the supreme court held that the Act's provisions exempting property owned by industrial development corporations from taxation did not violate Article II, section 28, where the property was held by an instrumentality of the city for a public purpose. *Id*.

In 1978, the Tennessee Attorney General noted that there was no requirement in the Act that required a lessee to make payments in lieu of taxes to the industrial development corporation. The Attorney General opined that payments in lieu of taxes could be made a condition of the lease, however, but could not be required absent a contractual provision. Op. Tenn. Att'y Gen. No. 78-251 (June 19, 1978). In 1979 and 1988, the Tennessee Attorney General opined that "if payments in lieu of taxes are being made the leasehold interest would not be taxed unless the fair rental value exceed the rental being paid plus the in lieu of tax payments." Op. Tenn. Att'y Gen. No. 88-154 (Aug. 29, 1988); Op. Tenn Atty Gen. No. 79-375 (Aug. 20, 1979).

Section 7-53-305, as it existed during the relevant tax periods, exempted industrial development corporations from taxation and specifically permitted municipalities to authorize the negotiation and acceptance of payments in lieu of taxes by industrial development corporations. Regardless of the constitutional concerns which a blanket

exemption from taxation upon payment of a minimal PIL might pose, we find nothing to suggest that the legislature intended to provide such an exemption. Tax exemptions will not be implied by the courts. *Hutton v. Johnson*, 956 S.W.2d 484, 488 (Tenn. 1997)(quoting *American Cyanamid Co. v. Huddleston*, 908 S.W.2d 396, 400 (Tenn. App.1995)). Indeed, there is a presumption against exemption, "and any well founded doubt defeats a claimed exemption." *Id.* We agree with Appellees that Creative Label's PIL's serve to reduce the taxable value of Creative Label's leasehold interest, but do not entirely exempt Creative Label from *ad valorem* taxes on its leasehold interest.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellant, Creative Labels, Inc., and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE