PFIZER INC., APPELLANT, V. LANCASTER COUNTY
BOARD OF EQUALIZATION, APPELLEE.
616 N.W. 2d 326

Filed August 25, 2000. Nos. S-99-908 through S-99-913.

Michael L. Schleich, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellant.

Gary E. Lacey, Lancaster County Attorney, and Michael E. Thew for appellee.

HENDRY, C.J., WRIGHT, GERRARD, McCORMACK, and MILLER-LERMAN, JJ., and INBODY and CARLSON, Judges.

McCORMACK, J.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts were stipulated by the parties: Pfizer Inc. is a multinational corporation authorized to do business in Nebraska, engaged in the development, manufacture, and sale of pharmaceuticals and other health care products. In 1994, Pfizer agreed to purchase the assets of SmithKline Beecham Animal Health (SBAH) from SmithKline Beecham PLC, a publicly owned British corporation. This transaction was completed in 1995. As part of the acquisition, Pfizer purchased personal property, real property, and a range of tangible and intangible assets located in 26 different countries.

In the United States, Pfizer purchased the assets of SmithKline Beecham Corporation, a subsidiary of the British parent corporation. These included assets located in Lancaster County referred to as the "Lincoln Plant," the "Lincoln Farm," and the "Agnew Farm." On January 1, 1996, Pfizer owned these

properties, including the personal property located therein. There is no material difference in the use made of the property or in the fair market value of the property between the time that the property was owned by SBAH and Pfizer.

Pfizer filed tax returns for 1996, basing those returns on information provided to Pfizer by SBAH, classified by class of property and year first placed in service. The returns were prepared as if the property had still been owned by SBAH, without regard to the transfer of ownership from SBAH to Pfizer. Subsequently, the Lancaster County assessor issued tax increase notices to Pfizer with respect to the three properties listed above, increasing the value of the personal property described on the 1996 tax returns. Pfizer timely protested the tax increase notices to the Lancaster County Board of Equalization (the Board). The Board denied Pfizer's protests, and Pfizer appealed to the Tax Equalization and Review Commission (the TERC). The appeal was subsequently consolidated with similar issues posed by Pfizer's 1997 and 1998 tax returns.

The TERC affirmed the decision of the Board. The TERC found that the purchase of the tangible personal property of SBAH by Pfizer was a purchase as defined by Neb. Rev. Stat. § 77-122 (Reissue 1996) and that the property must therefore be valued at its net book value as defined by Neb. Rev. Stat. §§ 77-118 and 77-120 (Reissue 1996). The TERC determined that pursuant to the relevant federal tax laws, the assessed value of the subject tangible personal property must be calculated based on the acquisition cost, or purchase price, of the property, as adjusted for depreciation pursuant to § 77-120. The TERC further determined that the relevant date for calculating that depreciation was the date of the purchase by Pfizer and, thus, affirmed the determination of the Board.

## ASSIGNMENTS OF ERROR

Pfizer assigns, consolidated and restated, that the TERC erred in its interpretation of §§ 77-118 and 77-120 and Neb. Rev. Stat. § 77-201 (Cum. Supp. 1998). Pfizer further argues that if the interpretation of those statutes reached by the TERC is correct, then those statutes violate the Equal Protection and Commerce

Clauses of the U.S. Constitution and the special legislation and uniformity clauses of the Nebraska Constitution.

## STANDARD OF REVIEW

Decisions rendered by the TERC shall be reviewed by the court for errors appearing on the record. *Bartlett v. Dawes Cty. Bd. of Equal.*, 259 Neb. 954, 613 N.W.2d 810 (2000). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* However, in instances where an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Id.* The constitutionality of statutes and statutory interpretation present questions of law. See, *Hobza v. Seedorff Masonry, Inc.*, 259 Neb. 671, 611 N.W.2d 828 (2000); *State ex rel. Stenberg v. Moore*, 258 Neb. 738, 605 N.W.2d 440 (2000). The burden of establishing the unconstitutionality of a statute is on the one attacking its validity. *Daily v. Board of Ed. of Morrill Cty.*, 256 Neb. 73, 588 N.W.2d 813 (1999); *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997).

## ANALYSIS

### STATUTORY INTERPRETATION

Section 77-201(3) provides in relevant part:

> *Tangible personal property*, not including motor vehicles registered for operation on the highways of this state, shall constitute a separate and distinct class of property for purposes of property taxation, shall be subject to taxation, unless expressly exempt from taxation, and *shall be valued at its net book value.* Tangible personal property transferred as a gift or devise or as part of a transaction which is not a purchase shall be subject to taxation based upon the date the property was acquired by the previous owner and at the previous owner's Nebraska adjusted basis. Tangible personal property acquired as replacement property for converted property shall be subject to taxation based upon the date the converted property was acquired

and at the Nebraska adjusted basis of the converted property unless insurance proceeds are payable by reason of the conversion.

(Emphasis supplied.)

We note that § 77-201(3) was amended in 1997. See 1997 Neb. Laws, L.B. 270 and 271. Those amendments do not affect our disposition of this appeal, and we cite to the current statute for the sake of simplicity and convenience. See *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue*, 259 Neb. 24, 607 N.W.2d 857 (2000).

Section 77-120(1) provides that "[n]et book value of property for taxation shall mean that portion of the Nebraska adjusted basis of the property as of the assessment date for the applicable recovery period in the table set forth in this subsection." Section 77-118 defines "Nebraska adjusted basis" as "the adjusted basis of property as determined under the Internal Revenue Code increased by the total amount allowed under the code for depreciation or amortization or pursuant to an election to expense depreciable property under section 179 of the code." The Internal Revenue Code states simply that "[t]he basis of property shall be the cost of such property, except as otherwise provided in this subchapter . . . ." I.R.C. § 1012 (1994).

There is no dispute that the property at issue in the instant case is tangible personal property subject to taxation, nor is there a dispute that the transaction in which Pfizer acquired the property was a purchase within the meaning of § 77-122. That section defines "purchase" as follows:

Purchase shall include taking by sale, discount, negotiation, or any other transaction for value creating an interest in property except liens. Purchase shall not include transfers for stock or other ownership interests upon creation, dissolution, or any other tax-free reorganization for income tax purposes of any corporation, partnership, limited liability company, trust, or other entity.

Pfizer argues that although it purchased the property at issue when it acquired SBAH, it was entitled to value the property based upon the net book value and the Nebraska adjusted basis established by SBAH as the original owner of the property. In other words, Pfizer claims that it should be allowed to value the

property as if it had been the original owner and no intervening purchase had taken place. Such an interpretation, however, conflicts with the plain language of the relevant statutes.

■ Pursuant to I.R.C. § 1012, "[g]enerally, a taxpayer's basis in an asset is equal to the cost *to the taxpayer* of acquiring the asset." (Emphasis supplied.) *Muserlian v. C.I.R.*, 932 F.2d 109, 114 (2d Cir. 1991). In this regard, the U.S. Supreme Court has observed:

> [W]e think the statutory provision that the "basis of property shall be the cost of such property" . . . normally means, and that in this case the Commissioner was justified in applying it to mean, cost to the taxpayer. A property may have a cost history quite different from its cost to the taxpayer. It may have been purchased for less or more than original cost, or built by contract which called for payments on which the builder profited greatly or suffered heavy loss. But generally and in this case the Commissioner was in no error in ruling that the taxpayer's outlay is the measure of his [or her] recoupment through depreciation accruals.

(Citation omitted.) *Detroit Edison Co. v. Comm'r.*, 319 U.S. 98, 102, 63 S. Ct. 902, 87 L. Ed. 1286 (1943). Accord, *Pounds v. United States*, 372 F.2d 342 (5th Cir. 1967); *Reis v. Commissioner of Internal Revenue*, 142 F.2d 900 (6th Cir. 1944). See, also, *Hinckley v. C. I. R.*, 410 F.2d 937 (8th Cir. 1969) (stating that basis for property is cost, not replacement value); *Parsons v. United States*, 227 F.2d 437, 438 (3d Cir. 1955) ("[t]he cost with which we are concerned is a concomitant of acquisition by a taxpayer").

■ Under I.R.C. § 1012, the basis of property is its cost to the taxpayer—in this case, Pfizer. The basis as defined by § 1012, in turn, composes the Nebraska adjusted basis under § 77-118, which then composes the net book value under § 77-120(1). The plain language of the statutes supports the determination of the TERC. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Hobza v. Seedorff Masonry, Inc.*, 259

Neb. 671, 611 N.W.2d 828 (2000); *Sack v. State*, 259 Neb. 463, 610 N.W.2d 385 (2000).

We also note that § 77-201(3) provides specifically that a subsequent property owner may assume the adjusted basis of the previous owner where the transfer of ownership is by gift, devise, or another transaction "which is not a purchase" and that property purchased to replace converted property may assume the adjusted basis of the converted property being replaced. The legal principle of expressio unius est exclusio alterius (the expression of one thing is the exclusion of the others) recognizes the general principle of statutory construction that an expressed object of a statute's operation excludes the statute's operation on all other objects unmentioned by the statute. See, *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue*, 259 Neb. 24, 607 N.W.2d 857 (2000); *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999). Since the Legislature saw fit to define the circumstances under which a taxpayer may value property based upon the adjusted basis established by a previous owner, it stands to reason that the Legislature intended such a specification to foreclose the possibility that a subsequent owner could assume the benefit of that status under other circumstances. See *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue, supra*.

In construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue, supra*; *In re Interest of Joshua M. et al., supra*. Were we to conclude that the acquisition of used personal property generally permits the subsequent property owner to assume the adjusted basis established by the previous owner, then the statute providing for such an assumption of status under circumstances of a gift, devise, or other nonpurchase transaction would be an unnecessary redundancy. Instead, basic principles of statutory interpretation require us to conclude that § 77-201(3) delimits the circumstances under which a subsequent property owner may assume the adjusted basis of the previous owner. See *A & D Tech. Supply Co. v. Nebraska Dept. of*

*Revenue, supra.* As Pfizer's acquisition of the property at issue in this case concededly does not fall within those circumstances, its assignment of error is without merit.

## EQUAL PROTECTION

Pfizer argues that §§ 77-118, 77-120, and 77-201, as interpreted by the TERC, violate the Equal Protection Clause of the U.S. Constitution. We note that the taxes which are the subject of this appeal were levied prior to the adoption of the equal protection clause of the Nebraska Constitution in the 1998 amendment to Neb. Const. art. I, § 3, and that that clause is not implicated in this appeal. See *Mach v. County of Douglas*, 259 Neb. 787, 612 N.W.2d 237 (2000).

The Equal Protection Clause of the 14th Amendment, § 1, commands that no state shall " 'deny to any person within its jurisdiction the equal protection of the laws.' " This clause does not forbid classifications; it simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992).

In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based may rationally have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. *Nordlinger v. Hahn, supra.* This standard is especially deferential in the context of classifications made by complex tax laws. *Id.* In structuring internal taxation schemes, the states have large leeway in making classifications and drawing lines which, in their judgment, produce reasonable systems of taxation. *Id.*

In *Nordlinger v. Hahn, supra*, the U.S. Supreme Court analyzed the California scheme for taxation of real property contained in Cal. Const. art. XIIIA. The assessment provisions of that article, similar to the scheme at issue in the instant case, essentially embody an "acquisition value" system of taxation, in which real property is assessed at values related to the value of the property at the time it is acquired by the taxpayer, rather than

to the value it has in the current real estate market. *Nordlinger v. Hahn, supra.* Over time, that acquisition value system created disparities in the taxes paid by persons owning similar pieces of property. *Id.*

█ The U.S. Supreme Court rejected an equal protection challenge to that system, finding two different rational considerations justifying the disparate assessments resulting from the California scheme. *Id.* The first of these, neighborhood preservation, relates specifically to real property and has no bearing on the instant case. The second, however, is relevant under the circumstances. The Court stated:

> [T]he State legitimately can conclude that a new owner at the time of acquiring his [or her] property does not have the same reliance interest warranting protection against higher taxes as does an existing owner. The State may deny a new owner at the point of purchase the right to "lock in" to the same assessed value as is enjoyed by an existing owner of comparable property, because an existing owner rationally may be thought to have vested expectations in his [or her] property . . . that are more deserving of protection than the anticipatory expectations of a new owner at the point of purchase. A new owner has full information about the scope of future tax liability before acquiring the property, and if he [or she] thinks the future tax burden is too demanding, he [or she] can decide not to complete the purchase at all. By contrast, the existing owner, already saddled with his [or her] purchase, does not have the option of deciding not to buy [the property] if taxes become prohibitively high.

505 U.S. at 12-13. The Court concluded that "classifications serving to protect legitimate expectation and reliance interests do not deny equal protection of the laws." 505 U.S. at 13. The Nebraska personal property tax scheme furthers the same legitimate state interest as does the California real property taxation scheme.

In evaluating the same California taxation scheme, the California Supreme Court concluded that another rational basis existed for the legislation. See *Amador Val. Joint Union H. Sch. Dist., Etc.,* 22 Cal. 3d 208, 583 P.2d 1281, 149 Cal. Rptr. 239

(1978). The California Supreme Court concluded that the " 'acquisition value' " approach to taxation found "reasonable support" in the theory that "the annual taxes which a property owner must pay should bear some rational relationship to the original cost of the property, rather than relate to an unforeseen, perhaps unduly inflated, current value." *Id.* at 235, 583 P.2d at 1293, 149 Cal. Rptr. at 251.

The legislative history of the Nebraska statutes at issue reveals another rational basis underlying the Nebraska legislation. The legislative history indicates that one of the specific reasons for adopting the net book value depreciation tax, as defined, was that it would provide an objective measure of valuing property and would be easily administered because it relies on information already available for federal income tax purposes. See, generally, Committee on Revenue, L.B. 1063, 92d Leg., 2d Sess. (January 31, 1992). The acquisition value scheme, unlike other assessments of current value, relies upon the objective, verifiable basis of cost. Moreover, because the Nebraska adjusted basis is tied to the Internal Revenue Code, the information necessary to verify the Nebraska adjusted basis has generally also been compiled for federal income tax purposes. The State has a legitimate interest in establishing a tax scheme that is objective and easily administered, and this interest provides a rational basis for any classifications established by the statutes at issue.

Pfizer argues primarily that the Nebraska statutes violate equal protection because they can result in items that are purchased at different prices or times, but are otherwise identical, having different net book values. The flaw in Pfizer's argument, however, is that the distinctions between such pieces of property are rational, being based on the time and cost associated with the purchase of the property. In addition, the California Supreme Court has stated:

> [T]he fact that two taxpayers may pay different taxes on substantially identical property is not wholly novel to our general taxation scheme. For example, the computation of a sales tax on two identical items of personalty may vary substantially, depending upon the exact sales price and the availability of a discount. [Acquisition value taxation]

introduces a roughly comparable tax system . . . whereby the taxes one pays are closely related to the acquisition value of the property.

*Amador Val. Joint Union H. Sch. Dist., Etc.*, 22 Cal. 3d 208, 236, 583 P.2d 1281, 1294, 149 Cal. Rptr. 239, 252 (1978).

Pfizer further argues that the statutes impermissibly distinguish between different types of transactions, such that an acquisition by one corporation of another through a stock sale is treated differently than an acquisition through an asset sale. For the reasons stated above, we also determine that this argument is without merit. Any distinction between acquisition of a company's assets through a stock sale and an asset sale is justified by the rational bases for the legislation analyzed above.

Pfizer also relies on the U.S. Supreme Court's decision in *Allegheny Pittsburgh Coal v. Webster County*, 488 U.S. 336, 109 S. Ct. 633, 102 L. Ed. 2d 688 (1989), which struck down a tax scheme similar to that in *Nordlinger v. Hahn*, 505 U.S. 1, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992), and in the instant case. Pfizer's argument is unavailing for two reasons. First, we note that *Nordlinger* is the more recent decision from the Court; thus, to the extent that it conflicts with a prior case, *Nordlinger* is controlling. Second, *Allegheny Pittsburgh Coal* is distinguishable from both *Nordlinger* and the instant case because the system at issue in *Allegheny Pittsburgh Coal*, while actually dependent upon acquisition value, was nonetheless at least nominally a current value assessment scheme. Thus, *Allegheny Pittsburgh Coal* does not prohibit the states from adopting an acquisition value assessment method, but merely prohibits the arbitrary enforcement of a current value assessment method. See *Nordlinger v. Lynch*, 225 Cal. App. 3d 1259, 275 Cal. Rptr. 684 (1990), *affirmed sub nom. Nordlinger v. Hahn, supra.*

▆▆▆ Pfizer also claims that the legitimate state interests served by the statutes can be served by other schemes that would not suffer from claimed constitutional infirmities. In the area of economics and social welfare, however, a state does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the U.S. Constitution simply because the classification is not made with mathematical nicety

or because in practice it results in some inequality. *Botsch v. Reisdorff*, 193 Neb. 165, 226 N.W.2d 121 (1975) (quoting *Dandridge v. Williams*, 397 U.S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970)). The fact that other schemes could have been selected does not mean that the scheme chosen is constitutionally infirm. See *Pick v. Nelson*, 247 Neb. 487, 528 N.W.2d 309 (1995). As long as the classification scheme chosen by the Legislature rationally advances a reasonable and identifiable governmental objective, a court must disregard the existence of other methods of allocation that other individuals might have preferred. See *Schweiker v. Wilson*, 450 U.S. 221, 101 S. Ct. 1074, 67 L. Ed. 2d 186 (1981).

In summary, we conclude that there is a rational basis for the acquisition value taxation scheme adopted by the Legislature and that the scheme does not violate the Equal Protection Clause. Pfizer's assignment of error is without merit.

COMMERCE CLAUSE

Pfizer claims that the statutes at issue violate the Commerce Clause of the U.S. Constitution. Pfizer claims:

> Here, the greatest likelihood is that the impact of the classification of types of sales, between asset sales and stock sales, will fall most significantly on large multi-national companies that cannot know, much less take into consideration, the impact of doing large asset sales transactions with impact in many jurisdictions. There will be no opportunity to structure such transactions to minimize Nebraska property taxes, thereby shielding Nebraska businesses by forcing higher property taxes upon large companies who acquire Nebraska businesses in asset sales.

Brief for appellant at 36.

The U.S. Supreme Court has long held that the express grant to Congress of the power to regulate commerce among the several states, see U.S. Const. art. I, § 8, contains a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject. See *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995). This construction serves the Commerce Clause's pur-

pose of preventing a state from retreating into economic isolation or jeopardizing the welfare of the nation as a whole, as it would do if it were free to place burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear. *Oklahoma Tax Comm'n v. Jefferson Lines, Inc., supra.*

The first flaw in Pfizer's argument, however, is that the tax in question is not addressed to the flow of commerce across the borders of Nebraska. Instead, it is a property tax, "which has never been doubted as a legitimate means of raising revenue by the situs State." See *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 624, 101 S. Ct. 2946, 69 L. Ed. 2d 884 (1981).

■ Pfizer argues that the valuation method set forth in the statutes nonetheless has an adverse effect on interstate transactions. In that regard, the U.S. Supreme Court has set forth a four-part test, sustaining a tax against a Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state. See *Oklahoma Tax Comm'n v. Jefferson Lines, Inc., supra*, citing *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977).

■ We have little difficulty in concluding that in the instant case, there is a substantial nexus between Nebraska and the subject of the tax, as the property at issue is located in the state. With regard to the second prong of the *Complete Auto Transit, Inc.* test, the Court has stated:

> For over a decade now, we have assessed any threat of malapportionment by asking whether the tax is "internally consistent" and, if so, whether it is "externally consistent" as well. . . . Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear. This test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate. . . .

External consistency, on the other hand, looks not to the logical consequences of cloning, but to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State. . . . Here, the threat of real multiple taxation (though not by literally identical statutes) may indicate a State's impermissible overreaching.

*Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. at 185.

It is clear that Nebraska's personal property tax scheme is both internally and externally consistent. The adoption of identical schemes in every state would not result in multiple taxation of the same property, nor does Nebraska's tax present any real threat of multiple taxation by any other states. Nebraska's tax reaches "only the activity taking place within the taxing State." See 514 U.S. at 196.

The heart of Pfizer's argument is based on the third prong of the *Complete Auto Transit, Inc.* test, that a state may not impose a tax which discriminates against interstate commerce by providing a direct commercial advantage to local business. See *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995). Thus, states are barred from discriminating against foreign enterprises competing with local businesses and from discriminating against commercial activity occurring outside the taxing state. *Id.*

With the Nebraska tax, however, the fact that the purchase was made in an interstate transaction has no bearing on the reason for the tax. See *id.* Only Nebraska can levy a property tax on property in use in this state, and that tax is imposed regardless of whether the property is purchased in an intrastate or interstate transaction. See *id.*

Moreover, to accept Pfizer's argument would be to conclude that *any* variation in the taxation schemes of the states would result in a Commerce Clause infirmity in all of those taxation statutes. This absurd result flows from Pfizer's mistaken assertion that a multinational corporation "cannot know" the tax implications of a large, interstate asset purchase. Brief for appellant at 36. Of course, there is no impermeable barrier to know-

ing the complete tax implications of such a transaction, and most multinational corporations presumably have experts dedicated to precisely that task. The fact that the statutes of different jurisdictions might result in a particular type of transaction being advantageous in one jurisdiction and disadvantageous in another does not mean that the Commerce Clause is violated; it simply means that the purchaser has to make a choice regarding its own best interests. A taxing state cannot be responsible for a taxpayer's failure to be aware of, or properly ascertain, the taxpayer's potential tax liability.

 Finally, the fourth criterion of *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977), asks only that the measure of the tax be reasonably related to the taxpayer's presence or activities in the taxing state. See *Oklahoma Tax Comm'n v. Jefferson Lines, Inc., supra.* Clearly, this criterion is satisfied by the fact that the property being taxed is in use in Nebraska, and the amount of the tax is based on the depreciated cost of the property.

Nebraska's personal property tax valuation scheme does not impose a discriminatory burden on interstate commerce under the standards set forth by the U.S. Supreme Court. Consequently, Pfizer's assignment of error to the contrary is without merit.

### SPECIAL LEGISLATION

 Pfizer claims that the statutes in question are special legislation, in violation of Neb. Const. art. III, § 18. A legislative act constitutes special legislation, violative of Neb. Const. art. III, § 18, if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class. *Swanson v. State*, 249 Neb. 466, 544 N.W.2d 333 (1996); *City of Ralston v. Balka*, 247 Neb. 773, 530 N.W.2d 594 (1995). The general test of constitutionality with respect to prohibitions against special legislation is reasonableness of classification and uniformity of operation. Classification is proper if the special class has some reasonable distinction from other subjects of a like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation. *Kuchar v. Krings*, 248 Neb. 995, 540 N.W.2d 582 (1995).

Pfizer does not contend that the statutes create a permanently closed class. With reference to Pfizer's argument that the statutes create an arbitrary and unreasonable method of classification, we concluded in our equal protection analysis above that any classifications drawn based on the time and cost of the purchase of property bear a reasonable relation to the legitimate objectives and purposes of the legislation. Our conclusions with regard to the Equal Protection Clause, set forth above, also support our determination that the statutes at issue do not violate Neb. Const. art. III, § 18. Pfizer's assignment of error is without merit.

UNIFORMITY CLAUSE

Pfizer argues that the statutes at issue violate Neb. Const. art. VIII, § 1. That section provides, in relevant part:

> The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct. Notwithstanding Article I, section 16, Article III, section 18, or Article VIII, section 4, of this Constitution or any other provision of this Constitution to the contrary: . . . (2) tangible personal property, as defined by the Legislature, not exempted by this Constitution or by legislation, shall all be taxed at depreciated cost using the same depreciation method with reasonable class lives, as determined by the Legislature, or shall all be taxed by valuation uniformly and proportionately[.]

The word "or," when used properly, is disjunctive. See, *Baker's Supermarkets v. State*, 248 Neb. 984, 540 N.W.2d 574 (1995); *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994). Thus, the uniformity clause gives the Legislature two options with respect to tangible personal property: to tax the property on a depreciated cost basis using the same depreciation method with reasonable class lives, or to tax all such property uniformly and proportionately.

The Legislature obviously chose the former option. The statutes at issue in this case clearly fall within the depreciated cost method contemplated by Neb. Const. art. VIII, § 1(2). Section 77-201 states that all such property shall be taxed using the same depreciation method unless exempted from taxation,

and Pfizer has offered little argument on why the class lives defined by § 77-120 are unreasonable. We have little difficulty concluding in any event that class lives based on the date of the taxpayer's purchase of the taxable property are reasonable in the constitutional sense. As the Nebraska statutes at issue satisfy Neb. Const. art. VIII, § 1, Pfizer's assignment of error is without merit.

## CONCLUSION

The TERC correctly determined that the net book value of tangible personal property, when transferred by purchase, is based upon the cost of that property to the taxpayer. This scheme for the valuation of tangible personal property does not violate the Equal Protection or Commerce Clauses of the U.S. Constitution, or the special legislation or uniformity clauses of the Nebraska Constitution. Consequently, the judgment of the TERC is affirmed.

AFFIRMED.

CONNOLLY and STEPHAN, JJ., not participating.